**Joseph E. DOWDELL, Plaintiff-Appellant,**

**v.**

**U. S. INDUSTRIES, INC., Defendant-Appellee.**

**No. 73–1424.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1973.

Decided April 30, 1974.

Martin S. Goldberg, Youngstown, Ohio, on brief for appellant.

John T. Milligan, Warren, Ohio, for appellee; John L. Pogue, Warren, Ohio, on brief.

Before CELEBREZZE and LIVELY, Circuit Judges, and WILSON,* District Judge.

FRANK W. WILSON, District Judge.

This is an appeal from a directed verdict of dismissal in a negligence action. The plaintiff (appellant) was injured when a heavy lifting ring on a large metal press fell and crushed his leg as the equipment was being installed. At the completion of all proof in the case, the District Court concluded that the evidence of negligence on the part of the defendant was insufficient to warrant submitting the case to the jury and directed a verdict of dismissal.

The settled rule for testing on appeal the action of a trial court in withdrawing a case from the jury and directing a verdict is for the appellate court to review the evidence and deter-

---

* Honorable Frank W. Wilson, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

mine whether it is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that a reasonable person could reach. Brady v. Southern Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943); Fortner Enterprises, Inc. v. United States Steel Corp., 452 F.2d 1095 (6th Cir. 1971). In performing this function an appellate court is bound to view the evidence in the light most favorable to the party against whom the motion for directed verdict was made and give that party the advantage of every fair and reasonable inference that the evidence may justify. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Wright & Miller, Federal Practice and Procedure, Civil § 2524.

When all reasonable inferences are accorded the plaintiff and the evidence in this record is viewed most favorably to him, the following may be said to have been the testimony on the issue of liability. The defendant is a manufacturer of heavy machinery, including large metal presses used in the automotive industry. Its plant is located in Chicago, Illinois. Over a period of years the General Motors Corporation purchased for installation at its automobile assembly plant at Lordstown, Ohio, a number of metal presses manufactured by the defendant, including a number of presses designated as Model 150 OBI, meaning that the presses were open back inclinable presses having a 150 ton pressing capacity. Mounted on top of the Model 150 press was a ring or bail for use in the movement and location of the press by means of an overhead crane. The size of the press was reflected in photographs and drawings and can be surmised from the fact that the bail itself weighed approximately 200 pounds. The bail was mounted in a hinged manner and was capable of swinging from horizontal to vertical to horizontal. However, to maintain the bail in a semivertical position, both as a

means of enabling the crane hook to be readily inserted and removed and as a safety factor to anyone assisting in this operation, blocks of metal, referred to as "keepers" or "stops", were welded to the press on either side of the bail hinge so as to prevent the bail from swinging more than 30° from vertical when disengaged from the crane hook. The welded metal keepers had a maximum strength or retaining capacity of 20,000 pounds. The bail was designed for lifting the press only when the press was vertical. The keepers were not designed to withstand the stress that would be imposed if the bail were used to lift the press from a horizontal position to a vertical position, but no warning was given by the defendant in this regard although the defendant was aware that the presses would be shipped in a horizontal position and that in erecting them they would have to be raised from a horizontal to a vertical position.

Sometime prior to January 1970 the defendant manufactured and sold a number of Model 150 presses to General Motors Corporation for installation at its Lordstown, Ohio, automobile assembly plant. These were manufactured at the defendant's Chicago plant. They were picked up at that plant and delivered to the Lordstown site by an independent motor carrier. There is no evidence, however, of any improper handling of the press by the motor carrier. Another independent contractor then removed the presses from the motor carrier trailers, raised them from a horizontal carrying position to a vertical operating position and installed them in the automobile assembly plant. The plaintiff, an iron worker of long experience and having prior experience in the installation of presses of this model, was employed by the contractor making the installation. In the course of installing one of these presses on January 16, 1970, the plaintiff mounted to the top of the press to disengage the crane hook from the bail. When he did so, the bail fell to a horizontal position, crushing the plaintiff's right leg. The plaintiff had performed

this same operation on other presses of the same model, but had never experienced or known of a press on which the bail would fall to a horizontal position on removing the crane hook. As previously indicated, no advice or warning was given by the defendant to those making the installation with regard to the condition or the use of the bail.

Although there was no evidence introduced at the trial regarding any inspection of the particular press upon which the accident occurred to determine the cause of the bail falling to a horizontal position, a mechanical engineer testified that it could only have occurred by reason of an absence of the keeper or by reason of the keeper failing to perform in the manner in which it was designed to perform. In the course of a general inspection of all newly installed presses following the accident, keeper bars were discovered to have been left off or broken off of four of the presses being installed at that time.

■ Upon the foregoing record the trial court concluded that the plaintiff had failed to carry the burden of proving any negligence upon the part of the defendant, stating that "[t]here is no evidence that the press was defective when it left the defendant." In reaching this conclusion, the district judge relied upon the case of Gedra v. Dallmer Co., 153 Ohio St. 258, 91 N.E.2d 256 (1958), wherein the Ohio Supreme Court stated the law in that jurisdiction to be that "if the cause of the injury to a plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of proving that his injury is the direct result of the defendant's negligence."

The principle of law just stated is not only settled law in Ohio, *see* Stevens v. Industrial Commission, 145 Ohio St. 198, 61 N.E.2d 198 (1945); Kata v. Second National Bank of Warren, 26 Ohio St.2d 210, 271 N.E.2d 292 (1971), but is a universally accepted principle of negligence law. As stated by the late Professor Prosser:

"It is never enough for the plaintiff to prove merely that he has been injured by negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. On this, too, the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not proved his case. The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that he was responsible for all reasonably probable causes to which the accident could be attributed." W. Prosser, Law of Torts 218 (4th ed. 1971).

Accordingly, to the extent that the plaintiff casts his case upon the theory of negligent manufacture only, and relies upon the failure or the absence of the keeper as being that negligence, he clearly failed to establish a jury issue. Even though the defendant might reasonably be found to be responsible for a failure of the keeper to prevent the bail from falling, if that were shown to be the source of the accident, the plaintiff's proof establishes as the equally probable cause of the accident a total absence of the keeper upon the press. Since the press had been handled both by a motor carrier and by an erector after it left the defendant's custody, and since the evidence reflects that the erector in lifting the press from a horizontal to a vertical position could as likely have been responsible as the defendant for the absence of the keeper (by breaking it off), the doctrine of *res ipsa loquitur* would not apply. Rather, in the words of Professor Prosser, "[i]t is at least equally probable that the negligence was that of another." A directed verdict would be proper upon this state of the record.

The plaintiff practiced this lawsuit, however, upon three theories of negligence: (1) negligence in design, (2) negligence in manufacture, and (3) negligence in failure to warn. Just as negligence may occur in the manufacture of a product, negligence may also arise from a lack of proper care by the manufacturer in the design of a piece of equipment, thereby creating an unreasonable risk of injury to others. Mobberly v. Sears, Roebuck & Co., 4 Ohio App.2d 126, 211 N.E.2d 839. Negligence may also arise from a failure of a manufacturer to warn those who use his equipment of a known but latent defect in the equipment rendering the equipment hazardous in certain foreseeable uses. *See* Burns v. Pennsylvania Rubber & Supply Co., 117 Ohio App. 12, 189 N.E.2d 645; Caruloff v. Emerson Radio & Phonograph Corp., (D.C.N.Y.1970) 314 F.Supp. 631 (applying Ohio law), affirmed (2nd Cir.) 445 F.2d 873; Sam v. Englewood Ready-Mix Corp., 22 Ohio App.2d 168, 259 N.E.2d 507. See also Powell v. E. W. Bliss Co., (D.C.Mich. 1972) 346 F.Supp. 819.

It should be noted that there was evidence in this case that the defendant had designed the bail keepers in such a manner that they were not adequate to withstand the stress should the bail be used to raise the press from a horizontal shipping position to a vertical operating position, a likely use of the bail in the absence of a warning. It should also be noted that the defendant was aware of this latent design condition, but gave no warning of any restricted use of the bail. When this evidence is considered and when it is recalled that there was evidence in the record that the accident could only have occurred from one of two causes, either an absence of the keeper, or a failure of the keeper to perform in the manner in which it was designed to perform, it becomes apparent that a jury issue existed as to negligence upon the part of the defendant. If the failure of the keeper to function were considered as the source of the accident, then reasonable minds might well conclude that the sole source of the accident lay with the defendant and further conclude that the defendant failed to use proper care in manufacturing the press with a defective keeper. Upon the other hand, if the absence of the keeper were considered to be the source of the accident, a condition that might reasonably have been occasioned either by the defendant in the manufacture of the press or by the erector in the erection of the press, reasonable minds could conclude negligence upon the part of the defendant in either eventuality. If the absence of the keeper were occasioned by the defendant, a lack of due care in the manufacturing process might well be concluded. Upon the other hand, if the absence of the keeper were attributed to the activities of the erector, reasonable minds might nevertheless conclude that the defendant failed to use proper care in designing the keeper to withstand the stresses of a foreseeable use, and/or that the defendant failed to use proper care to warn a foreseeable user of this latent hazardous condition, thereby rendering the defendant responsible for the keeper being broken or rendered ineffective in the course of erection. In reaching this conclusion it is appropriate to note that neither the trial court nor this court has purported to deal with the issue of contributory negligence, if any, on the part of the plaintiff.

When the evidence is viewed in this manner, it becomes apparent that a jury issue would exist as to the defendant's negligence, and this regardless of whether the accident occurred as a consequence of the failure of the keeper or whether it occurred as a consequence of an absence of the keeper, the only two explanations for the accident. When the evidence is viewed in this manner, it becomes apparent that the jury was not confronted with a choice of possibilities between the defendant and a third party, a situation to which Gedra v. Dallmer Co., *supra*, might apply, but rather that the defendant could be found responsible for all reasonably probable

causes to which the accident could be attributed. When the evidence is viewed in this manner, it becomes apparent that a jury issue existed as to the defendant's liability for the plaintiff's injury. As stated by Professor Prosser:

"The question then is what the reasonable man would have done under the circumstances. Under our system of procedure, this question is to be determined in all doubtful cases by the jury, because the public insists that its conduct be judged in part by the man in the street rather than by lawyers, and the jury serves as a shock absorber to cushion the impact of the law." W. Prosser, Law of Torts 207 (4th ed. 1971).

This case will be reversed and remanded for a new trial.