**Boris SAWCHIK, Plaintiff-Appellant,**

v.

**E.I. DuPONT DENEMOURS & CO., Defendant-Appellee.**

No. 84–3783.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1985.

Decided Feb. 13, 1986.

Ronald A. Banig, argued, Akron, Ohio, for plaintiff-appellant.

Ronald J. James, Janet L. Maher, argued, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant-appellee.

Before KRUPANSKY and GUY, Circuit Judges, and SUHRHEINRICH, District Judge.[*]

GUY, Circuit Judge.

Plaintiff appeals the granting of a directed verdict in the district court jury trial of his age discrimination in employment claim filed pursuant to 29 U.S.C. § 621 et seq.

■ We review the granting of a directed verdict by the trial court under the same standard used by that court in determining whether or not it was appropriate to grant the motion.

In considering a motion for a directed verdict under Rule 50(a), the trial court "must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury." O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir. 1975). As applied in this context, "sufficient evidence" is such that, when viewed in the light of those inferences most favorable to the nonmovant, Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct.

1077, 1089, 87 L.Ed. 1458 (1943), and Dowdell v. U.S. Industries, 495 F.2d 641, 643 (6th Cir.1974), there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable men could differ. Sulmeyer v. Coca-Cola Co., 515 F.2d 835, 841 (5th Cir.1975), cert. denied 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976), citing 5A Moore's Federal Practice ¶ 50.02[1] (2d ed. 1974). Appellate courts apply this same standard. O'Neill v. Kiledjian, supra, at 513, citing 9 Wright & Miller, Federal Practice and Procedure § 2524, at 542 (1971).

Milstead v. International Brotherhood of Teamsters, 580 F.2d 232, 235 (6th Cir.1978), cert. denied 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

When this standard is applied to the record made below, we are convinced that Judge Manos was correct in granting a directed verdict and we affirm.

## I.

Plaintiff began working for defendant in 1959, starting as a sales representative in defendant's Antifreeze Division. In 1974 plaintiff was transferred to the Consumer Paints Division as a sales representative. In August of 1980, certain business consolidations were made and the sales representative positions in the Consumer Paints Division were eliminated. Rather than layoff the plaintiff, defendant found a position for him as a sales representative in its Refinish Paints Division. At the time of this transfer, plaintiff was experiencing back problems and was considering a spinal fusion. Shortly after the transfer, plaintiff's back condition deteriorated and he decided to undergo corrective surgery.

Plaintiff applied for and received a six-month medical leave of absence, and entered the hospital in October of 1980. Plaintiff had been told by a superior that his territory would be held open for him

* Honorable Richard F. Suhrheinrich, United States District Court for the Eastern District of Michigan, sitting by designation.

pending his recovery. This was not in fact done, however, and shortly after plaintiff's surgery, he was informed that he was being transferred back to the Consumer Paints Division. Plaintiff claims he was told at the time of the transfer that it was for administrative reasons during his recovery period. Plaintiff expressed shock and concern at this transfer back because he knew there was no job for him back in the Consumer Paints Division (App. 28–30). In late October or early November, 1980, plaintiff learned from a co-worker that his territory in the Refinish Paints Division had been assigned to a 22-year old trainee (App. 30).

The above chronology of factual events is not disputed by the parties. It is also not disputed that under defendant's wage policy an employee is guaranteed a disability leave with full pay for up to six months. On April 5, 1981, plaintiff's first medical leave expired and, since he was not yet ready to return to work, he was given an additional three months leave of absence at 85 percent of his salary, although defendant had no obligation to make such an extension. This second leave expired on June 30, 1981, and at this point in time plaintiff was offered a position as sales correspondent in Wynnewood, Pennsylvania, beginning July 13, 1981. Plaintiff was not happy with this offer and sought a third leave of absence. This was denied, and it was clear at this point in time that plaintiff could (1) report to the new job in Wynnewood, (2) cease employment with defendant, or (3) take early retirement. On September 16, 1981, plaintiff elected to retire at full pension effective July 1, 1981. The back-dated effective date of July 1, 1981, was a negotiated date partially reflecting the fact that plaintiff had been off the payroll since his second medical leave expired on June 30, 1981. On November 1, 1981, plaintiff secured new employment with a third party, and, on April 14, 1982, filed an age discrimination charge with the Equal Employment Opportunity Commission (EEOC).

## II.

Since Ohio is a deferral state, plaintiff had 300 days from the date of the alleged discriminatory act to file a charge with the EEOC. Since he filed on April 14, 1982, the alleged discriminatory act must have occurred on or after June 22, 1981. Plaintiff seeks to run the time from July 1, 1981, the effective date of his retirement. Defendant urges October or November of 1980 when plaintiff allegedly knew of this transfer back to Consumer Paints and his replacement in the Refinish Paints Division by a younger person.

The resolution of this issue is helped by the fact that what constitutes the alleged discriminatory act was clarified on the record by Judge Manos at the time of argument on the motion for directed verdict.

THE COURT: Would you define for me the discriminatory act in this case?

MR. BANIG: Yes, Your Honor.

THE COURT: What is it?

MR. BANIG: It was the situation whereby, because of his age, Mr. Sawchik was offered a position for which he was not capable of accepting.

THE COURT: Which position was this?

MR. BANIG: Our original theory, Your Honor, and you have granted his motion, was the situation where he was transferred from one division to another.

THE COURT: Was the date on which that transfer was made and a younger man was employed in October of 1980 the unlawful act? Is that your definition of the unlawful act?

MR. BANIG: Yes, Your Honor.

THE COURT: And if that is the case, I just ruled that there was no filing timely within 300 days—

MR. BANIG: Yes, Your Honor.

THE COURT: —of that act. And the law requires that from the date the alleged act was committed, the complaint with the EEOC be filed. Now, is it your position that is the unlawful act?

MR. BANIG: Yes, it is Your Honor.

THE COURT: And it is your definition of the unlawful act and there is no other unlawful act?

MR. BANIG: Subsequent to the unlawful act, there was a continuing course of conduct that amounts to a—

THE COURT: Tell me.

MR. BANIG: The continuing reassurance to Mr. Sawchik that once he was physically able to go to work he would be reinstated.

THE COURT: I understand *Pierce versus Green Giant Company,* which you say you read, says "Mere continuity of employment, without more is ..."

&ast; &ast; &ast; &ast; &ast; &ast;

I want to know what your definition of the unlawful act is. Tell me and give me the date.

MR. BANIG: You already granted their motion.

THE COURT: If that's what it is, I am going to throw you out right now.

MR. BANIG: That's what it is.

THE COURT: And there is nothing else? Let the record show that counsel for the Plaintiff maintains that the illegal act occurred in October of 1980, and that he filed a complaint with the EEOC in April of 1981 or in—

MS. MAHER: 1982, Your Honor.

THE COURT: In April of 1982, and this is within the 300 days. Is that what you are telling me?

MR. BANIG: No, Your Honor.

THE COURT: Your motion is granted. This case is dismissed.

MS. MAHER: Thank you, Your Honor.

MR. JAMES: Thank you, Your Honor.

MR. BANIG: Thank you, Your Honor.

Joint Appendix at 49–51.

■ Since the alleged discriminatory act of which plaintiff had knowledge occurred in October or November of 1980, a filing of a charge with the EEOC on April 14, 1982, clearly would not be within the 300-day limitations period. However, the 300-day filing period is not jurisdictional and is subject to the doctrine of equitable tolling. *Wright v. State of Tennessee,* 628 F.2d 949,

953 (6th Cir.1980) (*en banc*). Thus, the real issue in this case is whether actions and conduct of the defendant subsequent to November 9, 1980 are such that would properly invoke equitable tolling considerations.

■ Plaintiff's attempt to fix July 1, 1981 as the date that the 300-day time starts to run won't stand scrutiny. This was simply the date his retirement became effective. There is no suggestion, nor could there be, that any discriminatory act occurred on that date. It is now settled that the 300-day time period begins to run in a discrimination case when the individual involved became aware of the discriminatory act and not when the consequences are felt. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). *Ricks* also teaches that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. at 504.

One of the primary reasons why plaintiff was unable to survive a motion for directed verdict was due to the fact that from the outset of this litigation he failed to properly differentiate between alleged wrongful conduct on the part of his employer generally and that specifically grounded in age discrimination. In plaintiff's complaint, for example, there is no reference whatsoever to the transfer out of the refinishing division and his replacement by a younger person. Nor did he reference this transfer in his EEOC charge. Indeed, plaintiff's complaint sets forth the alleged wrongful conduct as follows:

7. On or about July 30, 1981, while still under the care of the attending physician, Defendant ordered Plaintiff to report to its Wynnewood, Pennsylvania office, or be terminated.

8. Defendant knew that Plaintiff was medically unfit to report for work as ordered.

9. Defendant terminated Plaintiff from its payrolls on or about November 15, 1981.

10. Defendant wrongfully and willfully terminated Plaintiff's employment because of his age; Plaintiff then being between over thirty-nine (39) and under seventy (70) years of age, thereby violating the applicable federal statutes as well as the laws of the State of Ohio.

Appendix at 4–5.

At trial, plaintiff abandoned this theory because he could not establish that his termination (retirement) after refusing to report to Wynnewood was in any way age related. Plaintiff may well have felt wronged in being asked to report for duty while still claiming a medical disability but this does not implicate age discrimination.

There are really two discrete episodes involved here. The first concerned the original elimination of plaintiff's job in the Consumer Paints Division, his transfer to the Refinish Paints Division, and his subsequent transfer to a non-existent job back in the Consumer Paints Division while he was convalescing from surgery. It is at this point that the plaintiff has his only circumstantial evidence of age discrimination, i.e., being replaced by a younger person. Once this had occurred, plaintiff remained on medical disability leave and was not threatened with termination.

The second episode begins when plaintiff became well enough to return to work again and was offered the Wynnewood job and declined to take it. There is no age discriminatory animus alleged, however, in connection with this occurrence. It is true that the defendant, in effect, said "take Wynnewood, quit, or retire," but considerations of job availability were involved, not plaintiff's age.

■ This case is not analogous to those in which a person's employer discusses the *possibility* of termination but then leaves the employee in the limbo of uncertainty. Here we are not dealing with a termination at all but, rather, a transfer in which age was allegedly a determining factor in the

decision to transfer. Plaintiff learned nothing more about this transfer after his initial contemporaneous knowledge. At that point in time, the 300-day clock starts to run even though plaintiff was still on the payroll.

Since plaintiff's proofs themselves established the facts and circumstances concerning when he learned of the transfer and his replacement by a younger person, the trial court appropriately granted the motion for directed verdict at the conclusion of plaintiff's proofs.[1]

---

**1.** Plaintiff, on appeal, also raised an issue concerning the alleged overruling by the trial judge of an earlier decision on a summary judgment motion made by another judge to whom this matter was then assigned. At oral argument, plaintiff's counsel abandoned this argument, so there is no need to further consider this issue.