830 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jimmy Franklin CONNOR, Plaintiff-Appellant,
v.
Paul HELO; William Peters; John Allen; and Robert Barber,
Defendants-Appellees.
 No. 85-5215
 United States Court of Appeals, Sixth Circuit.
 October 2, 1987.
 
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges, and SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Connor, appeals the granting of a directed verdict in a jury trial. Connor, a prisoner at the Federal Correctional Institution in Ashland, Kentucky (FCI), had brought a Bivens-type action against a number of prison officials for the alleged improper opening of 'legal mail.' The suit sought money damages. At the conclusion of plaintiff's proofs, the trial court granted a motion for a directed verdict.
 
 
 2
 On appeal, Connor argues that the trial court abused its discretion in refusing a motion for a continuance and also erred in granting a directed verdict to the defendants. Since we conclude that Judge Wilhoit acted within the bounds of proper discretion in refusing the continuance and did not err in granting a directed verdict, we affirm.
 
 I.
 
 3
 Prior to being incarcerated at Ashland, Connor had been involved in civil litigation in North Carolina growing out of the destruction of his residence by fire. Connor had sued on an insurance policy and the insurance company defended utilizing an arson defense. Connor was incarcerated in Kentucky before these civil proceedings were fully concluded. They were ultimately concluded without his presence in favor of the insurance company. Connor had been represented by a North Carolina attorney, Charles W. Hipps.
 
 
 4
 After losing his North Carolina civil suit, Connor contacted Hipps and asked to be sent all papers and other evidence relevant to his case. Hipps sent what he had but Connor claims that the letters and packages sent from Hipps were improperly handled by prison officials and that contents were lost, thus making it impossible for Connor to pursue his North Carolina civil suit.
 
 
 5
 On December 13, 1982, Connor, proceeding in forma pauperis, filed this action against the prison officials allegedly involved in the improper mail practices about which Connor complained. Although a motion for appointment of counsel was initially denied, it was subsequently granted.
 
 II. The Motion for Continuance
 
 6
 Subsequent to the filing of this litigation in late 1982, the parties proceeded with discovery and filed a number of procedural and substantive motions. The docket sheet for 1983 alone shows forty-eight entries including such things as requests for interrogatories, motions to compel, amended complaints, motions to dismiss and for summary judgment, and motions for extension of time. Both sides were generating considerable paper. On April 13, 1984, the court directed that the parties file a status report in the nature of a pretrial order. Pursuant to the parties' filings, the court, on May 29, 1984, set a trial date of December 13, 1984. Discovery and the filing of a number of related motions continued unabated through the balance of 1984. A pretrial conference was held on November 30, 1984. At this conference, in addition to the usual business carried on at a final pretrial conference, a continuance in the trial date was granted at the request of the plaintiff. The continuance was granted for the express purpose of allowing plaintiff to take the deposition of his former North Carolina attorney, Charles Hipps. The trial was continued until March 6, 1985.
 
 
 7
 Between the time of the November 30, 1984, pretrial conference and the trial date of March 6, 1985, the discovery continued including the taking of Hipps' deposition. On March 1, 1985, the defendants filed a motion for a continuance alleging they had just become aware of an important witness. Thereafter, on the same date, Connor's attorney also filed a motion for continuance expressing concerns about witnesses being subpoenaed in time to obtain their presence for trial. On March 4, 1985, the plaintiff filed his pretrial memorandum of law, his witness list, and his exhibits as directed earlier by the court. On the next day defendants made their comparable filings.
 
 
 8
 On March 5, 1985, the trial commenced[1] with the court overruling renewed oral motions for continuance made by both sides. In overruling the motions, the court indicated in stern language that both sides had had adequate time to prepare for trial. The docket sheet supports this observation.
 
 
 9
 In his brief on appeal Connor complains of the failure to grant a continuance but makes no effort to show how he was prejudiced by the denial. He argues that as a prisoner he must take appointed counsel as he finds them but does not indicate any specific deficiencies in appointed counsel's preparation or performance.[2]
 
 
 10
 The granting or denial of a motion for a trial continuance is committed to the sound discretion of the trial judge and will not be reversed on appeal absent a showing of a clear abuse of discretion. Pingatore v. Montgomery Ward and Company, 419 F.2d 1138 (6th Cir. 1969) cert. denied, 398 U.S. 928 (1970). The parties engaged in extensive discovery here over a protracted period of time in a case involving a very simple fact situation. They were put on notice of the trial well in advance of the date and the plaintiff was granted an earlier continuance of the trial date. Under such circumstances and absent any showing of prejudice, we do not disturb the trial court's ruling.
 
 III. The Directed Verdict
 
 11
 We review the granting of a directed verdict by the trial court under the same standard used by that court in determining whether or not it was appropriate to grant the motion. Sawchik v. E.I. DuPont Denemours & Co., 783 F.2d 635 (6th Cir. 1986).
 
 
 12
 'In considering a motion for a directed verdict under Rule 50(a), the trial court 'must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury.' O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir. 1975). As applied in this context, 'sufficient evidence' is such that, when viewed in the light of those inferences most favorable to the nonmovant, Galloway v. United States, 319 U.S. 372, 395 . . . (1943), and Dowdell v. U.S. Industries, 495 F.2d 641, 643 (6th Cir. 1974), there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable jurors could differ . . .. Appellate courts apply this same standard. O'Neill, 511 F.2d at 513 . . ..'
 
 
 13
 Sawchik, 783 F.2d at 636 (quoting Milstead v. International Brotherhood of Teamsters, 580 F.2d 232, 235 (6th Cir. 1978), cert. denied, 454 U.S. 896 (1981)).
 
 
 14
 Since this was a Bivens action, Connor had the burden of proving that the individual defendant acted with the intent to deprive him of rights secured by the constitution. Mere negligence is insufficient to ground a Bivens action.
 
 
 15
 Viewing the testimony most favorably to Connor, the best that can be said for it was that he established that some mail or packages which contained legal materials were not opened in his presence as is required by Bureau of Prisons policy. In commenting on this, the district judge in a written opinion issued subsequent to the granting of the directed verdict stated:
 
 
 16
 Mail to inmates at FCI is handled either as ordinary mail or as special or legal mail. Ordinary mail is opened, inspected for contraband and then delivered to the inmate by a correctional officer. Special or legal mail is time-stamped on receipt, opened and inspected in the inmate's presence, and delivered to the inmate, who signs for it in a special logbook. Although Bureau of Prisons policy suggests that special mail be marked 'Special Mail--Open Only in Presence of Inmate' on the envelope, the defendants testified that every possible effort is made to place legal mail in the special mail category based on an examination of the return address. Because of the human element and the sheer volume of mail processed--1000 to 1500 pieces of mail on an average day--mistakes are sometimes made and legal mail is opened as ordinary mail.
 
 
 17
 The treatment of packages at FCI contains some elements of both systems. All packages sent to FCI, whether sent to inmates or employees, are opened and inspected for contraband, weapons, and explosives before being taken inside the institution. Because this is done in an area outside the main prison walls, inmates are obviously unable to be present. After the packages have been inspected, they are taken to the mail room and handled either as ordinary mail or special mail. These procedures were called the 'package policy' and there was no evidence that the plaintiff had been singled out for its application.
 
 
 18
 App. 241-242.
 
 
 19
 The fatal flaw in plaintiff's approach to this litigation was in failing to recognize that this Bivens action is not just another tort action for negligent deprivation of property. The constitutional overlay, involving as it does the element of intent which is required for a Bivens action, was completely lacking here. The most that plaintiff's proofs showed was negligence in handling the mail on the part of prison officials.
 
 
 20
 We also agree with Judge Wilhoit that plaintiff failed to prove any damages. He made no effort to show that he could still pursue his closed North Carolina case nor that the materials he claimed he did not receive would have been persuasive to a North Carolina court if he was allowed to reopen. On the contrary, there was very damaging evidence from the North Carolina case including testimony of Connor's wife indicating that he had been responsible for the intentional burning of his residence. (App. 245).
 
 
 21
 Upon a review of the record, we conclude that it would not have been appropriate to allow this case to go to the jury.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 An earlier order of the court had changed the trial date from March 6, 1985, to March 5, 1985
 
 
 [2]
 It appears, although plaintiff does not make this argument on appeal, that two inmate witnesses he wanted to testify were not present at trial. It is not clear why they were not present but it is clear that a third inmate witness who was present at trial was of no help in corroborating plaintiff's version of what occurred