992 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda COMPTON, Plaintiff-Appellee,
v.
John K. KOLVOORD, Defendant-Appellant.
 No. 92-3214.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1993.
 
 Before KEITH and SILER, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, John K. Kolvoord, appeals from the district court's order of judgment as a matter of law for plaintiff, Linda Compton, in this diversity action for fraud and negligence. Defendant alleged three errors on appeal: (1) the trial court's grant of plaintiff's motion in limine; (2) the award of punitive damages, attorney fees and prejudgment interest; and (3) the judgment as a matter of law. For the following reasons, the district court's judgment is AFFIRMED.
 
 
 2
 Plaintiff alleged that: (1) defendant committed fraud against plaintiff by falsely inducing plaintiff to sign a settlement and release agreement ("Agreement") in exchange for $100,000 made payable to plaintiff in four $25,000 bank checks issued by Ameritrust Company National Association ("Ameritrust"), and subsequently causing Ameritrust to issue "stop payment" orders on the bank checks; and (2) Ameritrust committed financial institution negligence by negligently and carelessly issuing the stop payment orders on the four bank checks.[1] At the close of plaintiff's evidence, the court granted plaintiff's motion in limine to exclude, as immaterial to the fraud issue, the testimony from defense witnesses concerning work performed by plaintiff in defendant's business. At the close of all evidence, the court entered judgment as a matter of law for plaintiff and awarded her compensatory damages of $100,000.00. The issue of awarding punitive damages was presented to the jury, which found for the plaintiff. Thereafter, the court awarded $100,000.00 in punitive damages, plus attorney fees of $151,187.50, prejudgment interest from July 29, 1988, and $1,084.25 as expenses incident to the trial for Compton against Kolvoord.
 
 I. FACTS
 
 3
 Plaintiff met defendant in January, 1983. At that time, defendant was a partner with his ex-wife in a business called "The V-8 Shop," which reproduced and sold antique auto parts. A personal and business relationship developed between the parties which led to plaintiff's quitting her job and moving in with defendant. With plaintiff's assistance, defendant expanded his business to include the buying and selling of used autos and auto parts.
 
 
 4
 Plaintiff accompanied defendant on trips to flea markets, auctions, and scrap yards where they purchased the used autos and auto parts that were resold for profit. Plaintiff was responsible for cleaning and finishing some of the autos, driving vehicles to and from the locations of purchase, and completing the autos' title work. Defendant handled all matters of accounting, the preparation and filing of tax returns, and paid all living expenses. In the beginning of the new business, the parties agreed to a "50/50" split of profits. However, as the profits were needed for the business, in return defendant promised plaintiff an equity position in his properties and in any property and investments obtained in the future.
 
 
 5
 In 1987, the parties jointly purchased a home in the Bahamas for $40,000 in cash, plus a 1970 Oldsmobile convertible worth approximately $18,000 to $20,000. Plaintiff was given an indenture deed for the property in the name of plaintiff and defendant.
 
 
 6
 Later that year, plaintiff terminated her personal and business relationship with defendant and began negotiating with defendant concerning an accounting and settlement of their business relationship. Defendant continued to support plaintiff by paying for education costs, rent and other expenses totaling approximately $10,000 to $12,000 for the first year after her departure. One year later, defendant entered into the Agreement with plaintiff. The Agreement provided for plaintiff's release of any and all claims she may have had against defendant, especially in, but not limited to, the Bahamas real estate, in exchange for $100,000 paid in four $25,000 bank checks. Immediately after the defendant delivered the checks to plaintiff, defendant called his banker in Ohio and informed him that the checks had been stolen and asked him to issue a stop payment order on the funds. Ameritrust complied with the request.
 
 
 7
 One week later, plaintiff was informed by her bank that a stop payment order had been issued on the checks. She then contacted defendant who admitted that he had purposely stopped payment on the checks.
 
 
 8
 Defendant falsely informed Ameritrust that he did not know how the "stolen" checks had come into plaintiff's possession. He maintained this position throughout the pretrial proceedings, but admitted during the trial that he falsely informed the bank that the checks had been stolen. Furthermore, defendant admitted at trial that the Agreement referred only to the Bahamas property deed and contained no reference to the other documents defendant claimed were wrongfully taken by plaintiff.
 
 II. MOTION IN LIMINE
 
 9
 Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. As the trial court has broad discretion to determine relevance matters, this court reviews for an abuse of discretion which affected substantial rights of a party. See Fed.R.Evid. 103; National Post Office Mailhandlers v. United States Postal Service, 751 F.2d 834, 841 (6th Cir.1985).
 
 
 10
 Plaitniff's complaint was based on the fraud committed by defendant by falsely inducing plaintiff to enter into the Agreement in exchange for checks later dishonored. At trial, plaintiff testified that she had actively participated as defendant's "half-partner" in the auto business. In fact, on more than one occasion, defendant reported to plaintiff her portion of any profits earned after the selling of an auto. Plaintiff further explained that the $100,000 figure agreed upon was an "accounting and settlement of [their] business relationship." Defendant corroborated certain aspects of plaintiff's testimony by admitting that plaintiff "did a very good job" on the cars, and that she accompanied him on several buying trips and handled most of the auto title work.
 
 
 11
 The district court determined that the defendant's proffered testimony regarding plaintiff's involvement in the business was irrelevant to the issue of fraud. Although there was substantial evidence presented regarding plaintiff's role in the business, the additional evidence was unnecessary to determine whether defendant committed actionable fraud. As the witnesses had no knowledge of the Agreement, their testimony would have been immaterial and caused undue delay in the proceedings. Defendant admitted that plaintiff had participated in some of the business activities. He further admitted his intent to defraud plaintiff by stopping payment on the bank checks. Thus, as the proffered evidence was irrelevant to the fraud issue, the district court did not deny defendant any substantial rights. See United States v. Dunn, 805 F.2d 1275 (6th Cir.1986).
 
 III. DAMAGES
 
 12
 Inasmuch as this case comes under the diversity juridiction of the federal courts, Ohio law is applicable. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938).
 
 Punitive Damages
 
 13
 In a fraud action in Ohio, the court determines the amount of punitive damages after the trier of fact decides whether punitive damages are to be allowed. Ohio Rev.Code § 2315.21(C)(2). The amount awarded should be no more or no less than that sufficient to punish and deter conduct "so callous in its disregard for the rights and safety of others that society deems it intolerable." Calmes v. Goodyear Tire & Rubber Co., 575 N.E.2d 415, 419 (Ohio 1991). Actual malice, or actions committed in a state of mind under which a person's conduct is characterized by hatred, ill will, "spirit of revenge," or retaliation are necessary to justify a punitive damage award. Drayton v. Jiffee Chem. Corp., 395 F.Supp. 1081, 1098 (N.D.Ohio 1975), modified, 591 F.2d 352 (6th Cir.1978).
 
 
 14
 Defendant admitted that he intended to defraud plaintiff out of the $100,000 and any business interests to which she was entitled. Moreover, he admitted lying to Ameritrust regarding the purpose of the loan and the status of the issued checks. Defendant repeated the falsified story under oath throughout pretrial proceedings. He showed no remorse for his actions and offered no apology for his fraudulent actions. Thus, defendant's actions were taken with "ill will" and a "conscious disregard" for plaintiff's rights. Accordingly, punitive damages were proper.
 
 Attorney Fees
 
 15
 Attorney fees may be assessed in an intentional tort action. Gustafson v. Cotco Enterprises, Inc.,5i 328 N.E.2d 409, 413 (Ohio App.1974). Moreover, where punitive damages are proper, a party may also recover reasonable attorney fees. Villella v. Waikem Motors, Inc. 543 N.E.2d 464, 469 (Ohio 1989) (citing Hutchinson v. J.C. Penney Cas. Ins. Co., 478 N.E.2d 1000, 1004 (Ohio 1985)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Plaintiff's attorneys represented her according to a contingency fee agreement. Counsel estimated their time spent on the litigation as 600 hours and testified to a $250 per hour billing rate. Therefore, the initial estimate of the value of their services was $150,000.
 
 
 16
 The Ohio courts have held that a court must consider additional factors when calculating an attorney fee award, including: (1) the time and labor involved in the litigation; (2) the novelty, complexity and difficulty of the litigation; (3) the experience, reputation and ability of the attorneys; and (4) the fee customarily charged in the area for similar legal services. Villella, 543 N.E.2d at 469-470. Defendant's counsel stipulated to plaintiff's counsel's experience and professional skill and to the reasonableness of their billing rate. The court found the time expended on the case reasonable and the miscellaneous expenses necessary and reasonable to the litigation. Finally, as plaintiff was successful, her attorneys were entitled to recover a "fully compensable fee." See Hensley, 461 U.S. at 435. Thus, the award of attorney fees was not erroneous.
 
 Prejudgment Interest
 
 17
 Prejudgment interest is proper where "the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." Ohio Rev.Code § 1343.03(C). A party has made a good faith effort "when he or she has: '(1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.' " Villella, 543 N.E.2d at 470 (quoting Kalain v. Smith, 495 N.E.2d 572, 574 (Ohio 1986)). Throughout the discovery proceedings, defendant made numerous misrepresentations concerning the Agreement negotiations and the status of the checks. At trial, he maintained that the checks were stolen. Thus, defendant did not fully cooperate in the discovery proceedings. Moreover, defendant rejected plaintiff's good faith offer to settle the case for the face value of the checks. Therefore, the award of prejudgment interest, at the statutory rate, was proper.
 
 IV. JUDGMENT AS A MATTER OF LAW
 
 18
 A trial court may enter a judgment as a matter of law where "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed.R.Civ.P. 50. The trial court must determine whether the evidence viewed in the light most favorable to the nonmovant raises a material issue of fact for the jury. Sawchick v. E.I. DuPont De Nemours & Co., 783 F.2d 635, 636 (6th Cir.1986).
 
 
 19
 To establish actionable fraud, plaintiff must prove: (1) false representation, actual or implied; (2) knowledge of the falsity or statements made with such utter disregard and recklessness that knowledge is inferred; (3) intent to mislead another into relying on the misrepresentation; (4) reasonable reliance; and (5) injury as a consequence of the reliance. Lloyd v. Classic Motor Coaches, Inc., 388 F.Supp. 785, 791 (N.D.Ohio 1974). A critical element of the action is a showing of injury sustained due to the fraud. Id.
 
 
 20
 At trial, defendant admitted that he: (1) falsely represented to plaintiff the terms of the Agreement; (2) knew that the statements were false; (3) intended to mislead plaintiff into relinquishing her rights and interests to the business and properties by making the false statements; and (4) knew that plaintiff relied upon the false statements when she signed the release. As a consequence of her reliance, plaintiff lost her interest in the Bahamas property as well as in any other property or business profits to which she was entitled.
 
 
 21
 In addition, defendant admitted to lying about other matters during deposition including his stated purpose of the loan and other circumstances surrounding the meeting and negotiations with plaintiff regarding the Agreement. Moreover, defendant repeatedly admitted that he fully intended to defraud plaintiff of the money. Thus, in light of these facts, plaintiff proved an actionable case of fraud, and the jury would have no basis for finding in favor of defendant. Accordingly, the trial court's judgment as a matter of law was proper.
 
 V. CONCLUSION
 
 22
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Ameritrust filed a crossclaim against defendant for fraud and indemnity. At the close of plaintiff's case, Ameritrust and plaintiff entered into a settlement agreement where Ameritrust agreed to pay plaintiff $100,000. Ameritrust was subsequently granted judgment as a matter of law against defendant on its fraud and indemnity claims