**Glenn C. NIDA; and Daniel P. Yurovich, Plaintiffs–Appellants,**

v.

**PLANT PROTECTION ASSOCIATION NATIONAL, et al., Defendants–Appellees.**

No. 92–3347.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1993.

Decided Oct. 15, 1993.

Jerome F. Weiss, William T. Davis (argued and briefed), Jerome F. Weiss & Associates, Cleveland, OH, for Glenn C. Nida and Daniel P. Yurovich.

John P. Malone, Jr. (argued and briefed), Cleveland, OH, Jeffrey J. Whitacre, Lynett, McGough & Associates, Lorain, OH, for Plant Protection Ass'n Nat. and Plant Protection Ass'n Union, Local 110.

Mikail U.M. Abdullah, Gary Cook, Forbes, Forbes & Teamor, Cleveland, OH, Gary Lynn Hayden, John M. Thomas (briefed), Ford Motor Co., Dearborn, MI, for Ford Motor Co.

Before: RYAN, Circuit Judge, KRUPANSKY, Senior Circuit Judge, and JOINER, Senior District Judge.*

KRUPANSKY, Senior Circuit Judge.

Plaintiffs–Appellants, Glenn Nida and Daniel Yurovich, have appealed the district court's order granting judgment as a matter of law to defendants-appellees, Plant Protection Association National and Local 110 (PPA), and Ford Motor Company (Ford), in this labor action alleging the union's breach of its duty of fair representation and the company's breach of the collective bargaining agreement. Plaintiffs initiated this hybrid § 301 action pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, charging that the defendant company and union failed to implement an arbitration award that restored certain occupational duties to plaintiffs' bargaining unit and compensated the affected employees accordingly. This action arose as a result of plaintiffs' dismissal from Ford. Plaintiffs' principal claim is that PPA acted in an arbitrary and discriminatory fashion, and in bad faith because it did not diligently and aggressively seek to enforce the terms and conditions of the arbitration award here in controversy against Ford during the on-going arbitration proceedings, and it improperly distributed the funds which resulted from the settlement with Ford to the general membership of the union.

At all relevant times, plaintiffs were members of the PPA, a bargaining unit that represented security guards and final car-checkers (checkers) at various Ford facilities, including the one at which plaintiffs were employed. Under the collective bargaining agreement, Ford specifically retained the right to lay-off PPA employees in order of seniority to accomplish a reduction in its labor force. The collective bargaining agreement did not distinguish between security guards and checkers for the purpose of determining seniority.

Prior to 1985, checkers were assigned to affix certain labels and stickers to completed vehicles; to inspect the interior of vehicles

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

for missing items; and to verify vehicle make, color, body style, installed radio equipment and vehicle identification number (VIN) against the vehicle's shipping invoice. As a result of an ongoing reduction in the work force, Ford reassigned various responsibilities from checkers to other employees and laid-off a number of checkers and security guards. Job assignments initially performed by the checkers, including label placement and removal of tire cards, were reassigned to employees represented by the United Auto Workers (UAW); while other duties previously performed by the checkers such as verifying VIN numbers and inspecting for stolen items were either automated or eliminated. Ford's implemented reorganization permitted it to reduce the number of checkers and security guards employed, including the number employed at the Lorain plant where plaintiffs were assigned.

Plaintiff Nida was a security guard at the Lorain facility in August 1985. Nida was laid off when a checker with more seniority was reassigned to his position. Plaintiff Yurovich was laid off when his position as a checker at the Lorain plant was eliminated. Both men rejected several offers of employment at other Ford plants, although they ultimately both accepted assignments as security guards at the Sandusky, Ohio installation. Plaintiffs received full pay for two months immediately following their lay-off and thereafter received severance pay. Yurovich's severance pay was discontinued only after he rejected a reassignment to a Ford facility within fifty miles of the Lorain plant.

As a result of the work reorganization, the PPA filed grievances charging Ford with violating the collective bargaining agreement by reassigning work responsibilities historically performed by PPA members to the UAW bargaining unit. The grievances were submitted to an arbitrator who affirmed Ford's right to reduce its work force by automating or eliminating duties previously assigned to checkers, but concluded that Ford could not arbitrarily remove work, specifically the placement of labels and stickers and the removal of tire cards, from PPA's jurisdiction and reassign those duties to the UAW. The arbitrator ordered that the transferred work

be returned to the jurisdiction of the PPA and that compensation be paid to the injured employees. The arbitrator remanded the case to the adversary parties "to identify employees who actually suffered losses of wages and benefits as a result of the contract violation." *J.App.* at 676. The arbitrator directed, that as a result of Ford's improper reassignment of work, affected employees were entitled to straight time wages and fringe benefits, less outside earnings and unemployment compensation for the period in question. The arbitrator retained jurisdiction to resolve any future disputes concerning implementation of the award.

Subsequent to the arbitrator's decision, PPA and Ford engaged in negotiations to implement the arbitrator's award. Ford had determined that due to the automation or elimination of certain duty assignments it could return all of the transferred work to the PPA without recalling any laid-off employees. PPA initially urged that the laid-off employees be reinstated. Ford countered by asserting that the lay-offs were due to the restructuring of work assignments and a reduction in the work force rather than to the reassignment of work to employees represented by the UAW. The dispute was scheduled for a second hearing before the arbitrator. Internally, the PPA questioned its ability to prove its charge alleging improper lay-offs, but believed it could prove the loss of overtime pay that resulted from Ford's reassignment of work to the UAW's jurisdiction. Accordingly, the PPA settled its grievance arising from lost overtime for $175,000. The recovery was equally distributed among the employees it represented at the four Ford facilities, including the Lorain plant where plaintiffs were employed.

Plaintiffs acknowledge that they learned of the settlement after reading a newspaper article dated September 1, 1987. Within the next month, union officials attempted to deliver checks to both parties. Yurovich accepted his check but refused to cash it. Nida refused to accept his check after being informed of the amount ($1600) because he believed he was entitled to more money. Both Yurovich and Nida consulted with attorneys to evaluate their respective legal po-

sitions and to determine their rights. Although plaintiffs made repeated efforts through counsel to procure the details of the settlement with Ford, they received no additional information until at least December, 1987. They received a copy of the arbitrator's decision after they initiated this action on April 22, 1988.

Thereafter on July 14, 1988, defendants filed a joint motion for summary judgment that was overruled on February 12, 1991. Subsequent to the denial of defendants' motions to dismiss, trial commenced on January 21, 1992. On January 27, 1992, defendants moved for judgment as a matter of law under FED.R.CIV.P. 50(a) which the court granted, entering judgment in favor of defendants on January 29, 1992.[1] In disposing of the case, the district court concluded that the union had not acted in an unreasonable, arbitrary or capricious manner in negotiating the settlement and therefore judgment as a matter of law in favor of defendants was proper. Plaintiffs' motion for a new trial was denied and a timely notice of appeal was filed.

■ As a preliminary matter, this court rejects defendants' argument that plaintiffs' § 301 claim is barred by the statute of limitations. Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), requires that claims of unfair labor practices be brought within six months of the alleged misconduct. The Supreme Court has imposed this statute of limitations on hybrid § 301 actions for breach of the duty of fair representation and wrongful termination. *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This six-month time period accrues from the date that the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir.1985). Plaintiffs in the instant case have conceded that they both learned of the settlement during September, 1987. The

record discloses, however, that despite their diligent efforts, they could not learn the terms and conditions of the arbitration settlement until December, 1987. Thus, plaintiffs did not reasonably know of the specific conduct that joined the issues that had been raised by the arbitration or the terms and conditions of the settlement between PPA and Ford until December, 1987, when they discovered that the settlement excluded recovery for lost straight-time wages or their reinstatement, but simply provided for the payment of lost overtime wages. Because plaintiffs were not aware of the nature of the union's activity in pursuing a settlement, despite their due diligence, until sometime in December, 1987, the filing of the complaint on April 21, 1988, was well within the applicable statute of limitations.

In reviewing a directed verdict under FED. R.CIV.P. 50, this court applies the same standard as the district court. *Sawchik v. E.I. Du Pont de Nemours & Co.*, 783 F.2d 635 (6th Cir.1986).

In considering a motion for a direct verdict under Rule 50(a), the trial court "must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury." *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir.1975). As applied in this context, "sufficient evidence" is such that, when viewed in the light of those inferences most favorable to the non-movant, *Galloway v. United States*, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943), and *Dowdell v. U.S. Industries, Inc.*, 495 F.2d 641, 643 (6th Cir.1974), there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable men could differ. *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 841 (5th Cir.1975), *cert. denied* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976), *citing* 5A Moore's Federal Practice ¶ 50.02[1] (2d ed. 1974). Appellate courts apply this same standard. *O'Neill v.*

---

1. FED.R.CIV.P. 50(a) provides

(1) If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a

motion for summary judgment as a matter of law against that party on any claim, counterclaim, crossclaim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

*Kiledjian, supra,* at 513, *citing* 9 Wright & Miller, Federal Practice and Procedure § 2524, at 542 (1971).

*Sawchik,* 783 F.2d at 636 (quoting *Milstead v. International Brotherhood of Teamsters,* 580 F.2d 232, 235 (6th Cir.1978), *cert. denied,* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981)). Accordingly, the central question on appeal is whether the union breached its duty of fair representation toward Nida and Yurovich.

■■■ Plaintiffs' first assignment of error contends that the district court applied an overly broad standard of reasonableness in determining that the union's conduct was not arbitrary, unreasonable or capricious. A union breaches its duty of fair representation if its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Association, International v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (citation omitted). O'Neill mandates that a deferential standard of review be utilized in evaluating a union's actions. "They may be challenged only if 'wholly irrational.'" *Walk v. P\*I\*E Nationwide,* 958 F.2d 1323, 1326 (6th Cir.1992) (quoting *O'Neill,* 499 U.S. at 67–68, 111 S.Ct. at 1130). Moreover, "[i]n carrying out its duty of fair representation, an unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Id.*

■ On appeal, plaintiffs attempt to limit the extremely deferential approach of *O'Neill* by confining it to contract negotiation cases. Plaintiffs' argument reasons that "the factual and legal landscape," *O'Neill, supra,* of arbitration differs significantly from the context of contract negotiations in that a union possesses significantly more discretion in negotiating the terms of a contract than it possesses in implementing an arbitration award. Therefore the standard for judging arbitrary actions should necessarily be more stringent in assessing the union's diligent pursuit of its duty of fair representation in the implementation of an arbitration award than the standards applied to the union's conduct during the negotiation of a collective bargaining agreement. Plaintiffs, however, fail to cite any post-*O'Neill* cases supporting their position. On the contrary, this court has decided that the *O'Neill* standards apply to both contract-negotiations and the grievance or arbitration process. *Walk,* 958 F.2d at 1326.

Given the factual background of the instant case, this court concludes that PPA's decision to settle the case for overtime payments, rather than to pursue reinstatement of plaintiffs and other similarly situated persons was not so wholly irrational as to be arbitrary. The arbitrator's award clearly remanded the case to the adversaries to determine only the identity of the injured parties and the extent of the total accrued damages; hence, the union's failure to determine what individual damages Yurovich and Nida suffered as a result of their lay-offs did not violate the arbitrator's award. Given PPA's inability to prove that the lay-offs were attributable to the work reassignment, rather than Ford's reorganization and work force reduction, and its belief that it could prove loss of overtime wages that resulted from Ford's reassignment of work, its decision to settle for lost overtime pay was not arbitrary in light of Ford's assertion that plaintiffs' positions would have been eliminated in any event due to the automation or elimination of several functions. The PPA did not act arbitrarily in settling for lost overtime pay and therefore plaintiffs' first assignment of error is without merit.

■ Plaintiffs next challenged the district court's exclusion of Exhibit 13, which is a calculation of their individual lost wages attributable to their layoffs, and the exclusion of evidence of damages suffered after December 31, 1987, when a new collective bargaining agreement became effective that removed certain checking functions from the PPA. The district court excluded Exhibit 13 under FED.R.EVID. 408 [2] as a document "pre-

**2.** Rule 408 provides that

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or

pared in preparation for a negotiation of a settlement." *J.App.* at 661. There is no evidence, however, that this exhibit was part of an offer to compromise made to PPA by Ford; rather, the exhibit was prepared to estimate the lost wages suffered by the laid-off employees. Because this exhibit was not an offer to compromise or prepared for purposes of negotiating a compromise, the district court erred in excluding Exhibit 13 under Rule 408. Any error that resulted from the exclusion of this evidence was, however, harmless, because plaintiffs failed to prove that the union had acted arbitrarily in implementing a settlement. Exhibit 13 had no relevance as proof that the union's decision to settle the controversy with Ford was arbitrary. Moreover, the exhibit does not, as plaintiffs asserted, reflect a causal relationship between the contract violation (the transfer of work from the PPA to the UAW) and the plaintiffs' lay-offs. The exhibit detailed the damages suffered by certain employees, including the plaintiffs, that resulted from the elimination of final checking but it does not distinguish between work that had been properly eliminated and work that had been improperly transferred to the UAW. The arbitrator expressly recognized Ford's right to reduce the work force by automating or eliminating certain assembly line tasks. Consequently, because Exhibit 13 would not have made a difference in the outcome of the trial, its exclusion was harmless error.

■■ Plaintiffs also challenged the exclusion of evidence relating to damages that accrued after a new collective bargaining agreement took effect on December 31, 1987. This court reviews decisions excluding evidence on an abuse of discretion standard. *Polk v. Yellow Freight System, Inc.,* 876 F.2d 527, 532 (6th Cir.1989). "In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence. However, even if a

mistake has been made, a new trial will not be granted unless the evidence would have caused a different outcome at trial." *Id.* As a result of Ford's on-going work force reduction, the new collective bargaining agreement between the PPA and Ford properly eliminated certain checking duties from the jurisdiction of the PPA. Plaintiffs suffered no damages as a result of the elimination of those duties because those functions were no longer being performed by members of plaintiffs' collective bargaining unit. Accordingly, evidence alleging such damages was not relevant and therefore was correctly excluded.

For the reasons stated, the district court's decision is hereby **AFFIRMED.**

promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion

of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.