*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0046P (6th Cir.)
File Name: 04a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

ROBIN ROCHELLE LUCAS,
  *Defendant-Appellant.*

No. 02-5399

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 01-10022—James D. Todd, Chief District Judge.

Argued: August 6, 2003

Decided and Filed: February 12, 2004

Before: BOGGS, Chief Judge; RYAN, Circuit Judge; and
ROSEN, District Judge.[*]

———————

## COUNSEL

**ARGUED:** Jerald W. Newton, Sedona, Arizona, for
Appellant. Camille R. McMullen, ASSISTANT UNITED

———————

[*] The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

STATES ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Jerald W. Newton, Sedona, Arizona, for
Appellant. Camille R. McMullen, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

  BOGGS, C. J., delivered the opinion of the court, in which
RYAN, J., joined. ROSEN, D. J. (pp. 20-29), delivered a
separate concurring opinion.

———————

## OPINION

———————

  BOGGS, Chief Judge. On May 18, 2001, Robin Rochelle
Lucas was indicted by a grand jury for knowingly and
intentionally possessing with the intent to distribute 500
grams or more of a mixture containing cocaine, in violation
of 21 U.S.C. § 841(a)(1). In September 2001, Lucas was
convicted by a jury as charged in the indictment and was
subsequently sentenced to 121 months in prison, four years of
supervised release, a $100 special assessment, and a $15,000
fine. Lucas appeals the judgment against her on three
grounds, each of which she claims merits reversal. First, she
argues that the district court abused its discretion in granting
the government's motion *in limine* to exclude from the trial
any mention of the fact that Morrell Presley, a person
involved in the events leading to Lucas's arrest but not a
witness at her trial, had previously been convicted for cocaine
trafficking, when the defense's theory was that the drugs were
Presley's and not Lucas's. Second, Lucas argues that the
district court abused its discretion when it ruled that she could
not introduce evidence, as an explanation of her nervous
behavior during her arrest, that she had been raped by prison
guards in the past. Third, Lucas contends that the court erred
in denying her *Batson* motion, in which she argued that the
prosecutor exercised a peremptory challenge against a
potential juror in a racially discriminatory manner, in
violation of the Equal Protection Clause. *See Batson v.*

*Kentucky*, 476 U.S. 79 (1986) (prohibiting the exercise of race-based peremptory challenges). Lucas also appeals her sentence and claims that the district court abused its discretion in not finding that her prior rape by prison guards and her charitable work for human rights organizations such as Amnesty International were grounds for a downward departure. We affirm Lucas's conviction and sentence.

## I

Robin Rochelle Lucas was arrested on May 9, 2001 in Tennessee. At the time, she was living in California with her grandmother, her nephew, and two nieces. Lucas testified at her trial that she was on vacation with two friends, Angelina Watts and Kimberly Quinney, on her way to visit another friend, Jackie Parker, who lived in Memphis, and to attend the "Memphis in May" festival. On May 8, 2001, Lucas, Watts, and Quinney flew from California to Nashville. At the Nashville airport, Watts obtained a rental car. As they left the airport, Lucas says she saw a sign for Knoxville and Chattanooga (which are over 200 miles away), which she followed, thinking that Knoxville was only a few minutes away from Nashville. The three women stopped off at a liquor store a few minutes down the road and purchased two bottles of Hennessey. Lucas then paid for a room at a Residence Inn, which she claims she thought was in Knoxville, but was actually still in Nashville. The group decided to go to Walgreens, where Quinney purchased several items, including food and utensils for cooking dinner in the room's small kitchenette. The three went back to the hotel, prepared food, and drank.

The three women said that they had planned to drive to Memphis the next morning, May 9, but they got up late and Lucas wasn't able to get in touch with her friend, Parker, the woman she was to meet in Memphis. Lucas then claims to have called Morrell Presley, a man she claims to have met twice before (very briefly) through a friend, and asked him for directions to Memphis. Lucas testified that she told Presley

that she was in Knoxville, and then gave him the address and name of the hotel. Presley apparently recognized the hotel and said he would come over to see her, but did not tell her that she was not in Knoxville. Lucas awakened the other women, telling them to get dressed because Presley was going to be visiting them shortly.

Presley came over, they watched a movie, and eventually the group decided they were hungry. Presley volunteered to go for food and Quinney prepared a shopping list for him, including chicken and cooking oil. Presley said he was low on gas and so Watts allegedly gave him the keys to the rental car, which he took instead of his own car, leaving the room at about 2:30 p.m.

Presley returned to the hotel room approximately five hours later, at about seven-thirty at night, and although he brought some groceries, he did not return with the chicken or cooking oil, allegedly the main reason for his trip. Lucas had been teased by Watts and Quinney, who suggested that Presley had "made off" with the rental car, leaving his old car behind. When Presley finally returned, without the chicken, Lucas testified that she grabbed the keys out of frustration and started driving towards Memphis. At around eight, Lucas called Parker and told her that she was on her way to pick her up in Memphis.

At the hotel, Presley became upset, asking where Lucas had gone with the rental car. According to Quinney's testimony at trial, Presley was ranting and raving, calling everyone names. Presley urged Quinney and Watts to call Lucas and convince her to drive back, specifically stating to Quinney that she should "[c]all that B and tell her to come back" and that his cell phone was in the car. Quinney called Lucas and told her "[t]hat she needed to come back because she had . . . Morell's cell phone. She needed to bring him his cell phone." At some point Presley even got on the phone and started yelling at Lucas to come back, telling her that "she didn't know who he was" and calling her names. Phone records

verified that phone calls were made consistent with this testimony, although the only evidence presented as to what was said during the calls and, indeed, of any interaction with "Presley," was the testimony of Lucas and her two friends: Quinney and Watts.

At 9:25 pm, Lucas was pulled over by Trooper Ollie Parker for speeding at 92 miles per hour near mile marker 104 on I-40 going west towards Memphis. As Parker was copying information down for Lucas's ticket, he realized that her driver's license was expired, called it in, and found out that it was suspended. When Parker went back to Lucas and told her of his findings, she explained to him that she had "taken care" of the suspended license, but Parker was unable to verify this fact.

Trooper Earl Hammett drove up at around 10 pm, and parked behind Parker's cruiser, which was behind Lucas's rental car. He activated the cruiser's video camera at 10:03 pm, and this video was played for the jury at trial. About five minutes later, Lt. Linuel Allen arrived. Both troopers were filled in on what was going on by Parker.

At some point Lt. Allen retrieved Lucas's coat from the car, and found in it $2,855, mostly in twenty-dollar bills. Lucas volunteered that this was her traveling money and that she had started off the trip with $3,000. Lucas further explained that she had been driving for about two hours and was on her way from Knoxville to Memphis in order to pick up a relative and take them back to a Knoxville family reunion. It was obvious to the officers that this was not true, since they were not two hours from Knoxville.

Prior to being handcuffed, Lucas was told to remove her belongings from the car, because she was unlikely to get the car back. Hammett escorted Lucas to the front passenger door, and she leaned in to gather her things. Lucas walked back to the trooper's car with her hands full. Shortly thereafter, the troopers realized that the car was locked and

that Lucas did not have the keys. Hammett began shining his flashlight into the vehicle, looking for the keys, when he spotted two bags wrapped in cellophane and stuck under the front driver's seat. The bags were eventually retrieved from the vehicle and later determined to contain 2.2 kilograms of cocaine. A number of items were found in the car during a subsequent search. Three cell phones were seized, registered to Angelita Watts (Vallejo, California), Robyn McPherson (Vallejo, California), and Cathy Jefferson (Nashville, Tennessee) respectively. Thirteen credit cards were recovered, eleven in Lucas's name and two in the name of Robyn McPherson, along with a Visa Gold Card application in Robyn McPherson's name and a receipt from Walgreens. Lucas explained that Robyn McPherson is her niece and that she had taken her niece's credit cards and telephone calling cards because her niece had written over $7000 in insufficient fund checks, which Lucas had covered, and her niece had run up a phone bill of $800.

Lucas denied having any knowledge of the cocaine found in the rental car that night. The defense's theory at trial was that Presley was the one who had put the drugs into the car. Through the testimony of Quinney and Watts, the defense brought out that Presley was alleged to have been in the car immediately before Lucas took it on the night that she was stopped. In addition, according to the testimony of the women, Presley took the car for several hours, despite the fact that his errand of grocery shopping should have been a short trip. When he did arrive back, he did not have the groceries he was supposed to have gotten, and presumably he had plenty of time to purchase the drugs, using someone else's car for the transaction. Finally, there was testimony verifying the fact that Presley was furious with Lucas for driving off in the car and violently insistent that she return immediately, which makes sense in view of the defense's theory that Lucas had unwittingly driven off with Presley's drugs, worth thousands of dollars.

It was also brought out at trial that Lucas had been convicted of bank fraud conspiracy in 1994 (when she would have been about 28 years old), involving approximately $7,000 worth of traveler's checks and the use of false identification. She served a thirty-month sentence, during which she was raped by prison guards repeatedly. In 1998, she received a $500,000 settlement based on the sexual assault she claimed to have experienced while incarcerated, which she states she invested in real estate, a clothing store, and a nursing home facility, and which also could explain to some extent the amount of money found on her at the time of her arrest. Lucas testified at trial that she was worth somewhere between $600,000 and $700,000; however, Lucas filed a statement at sentencing admitting that she was wrong, claiming that she thought that the *appraised* value of her property was the *net* worth of her property (without subtracting the amount of her mortgage). Lucas also testified at sentencing that she has worked with women in prison and with various international human rights groups since being released from prison for her prior conviction.

## II

### A. Presley's Prior Conviction

Lucas contends that the district court erred in prohibiting the defense from presenting evidence of Presley's prior conviction for possessing and distributing cocaine, on the basis that it was irrelevant. Lucas claims that not only was this an erroneous application of the Federal Rules of Evidence, but that this exclusion unconstitutionally prevented her from mounting a complete defense.

A few days prior to trial, a certified copy of a conviction of Morell Presley was obtained, which reflected that Presley had previously been convicted of possessing cocaine with the intent to distribute it. Lucas sought to introduce this evidence and the court denied the request:

**Court**: You can certainly mention that somebody else committed this crime, not the defendant; but whether you can introduce a certified copy of a document to show this person's a convicted felon or not, that's a bit of a stretch. Let's wait and see. Don't mention the certified copy of the conviction or that he was a convicted felon until we've had an out-of-jury hearing. You can certainly present the defense that your client didn't do it. It was Morrell Presley's drugs. You can certainly do that. I guess that's the defense, isn't it?

**Defense Attorney**: Yes, sir, Your Honor.

Later on at the same hearing, the court stated as follows:

You can certainly testify or have evidence about Mr. Presley, but unless something else develops of which I'm not now aware, I'm not going to let the prior conviction in because its probative value is greatly outweighed by the prejudice.

The government argues that the court's decision was correct and further submits that Federal Rule of Evidence 404(b) prohibits the admission of this evidence because it prohibits introducing evidence of other crimes to prove the character of a person in order to show action in conformity therewith. Although the district court did not explicitly rule that the evidence was inadmissible pursuant to Rule 404(b), it did address this line of reasoning:

**Court**: [W]hy is it relevant that he's been convicted of a cocaine offense?

**Defense Attorney**: *Because it shows his propensity to leave the cocaine in the car.* He's the one that had the car for several hours before Ms. Lucas had the car.

**The Court**: Aren't prior convictions inadmissible to show propensity?

. . .

Well, this is an interesting question, gentlemen. I have never in thirty years had this one come up. It seems to me though that this is still the type of evidence that is far more prejudicial than probative. Whether Mr. Presley had a prior cocaine conviction or not doesn't mean that he did or did not put the cocaine in this car. I'm going to sustain the government's objection to the testimony that Mr. Presley was a convicted cocaine dealer.

(emphasis added).

We agree with the government that evidence of Presley's prior conviction does come under Rule 404, although it falls within a subset of such evidence sometimes called "reverse 404(b)" evidence, in which the evidence of a prior act by another is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant. *See, e.g., United States v. Hill,* 322 F.3d 301, 308 (4th Cir. 2003). By its plain terms, Rule 404(b) mandates that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a *person* in order to show action in conformity therewith," instead of restricting itself to evidence proving "the character of the accused." Rule 404(b) (emphasis added).[1]

Nevertheless, we recognize, as do several of our sister circuits, that such evidence when presented by the defense, requires us to reconsider our standard analysis, as the primary evil that may result from admitting such evidence against a defendant -- by tainting his character -- is not present in the case of 404(b) evidence used against an absent person. *See,*

---

[1] The rule does, in the next sentence, explicitly refer to "the accused." However, it does so in the context of notice requirements that must be followed by a prosecutor introducing such evidence *against a defendant.* This differential use of "the accused" provides additional evidence that the first sentence is *not* intended to apply only to the accused.

*e.g., United States v. Stevens*, 935 F.2d 1380, 1404 (3d Cir. 1991). *See also United States v. Wilson*, 307 F.3d 596, 601 (7th Cir. 2002). There is, therefore, some merit in considering the admissibility of such 404(b) evidence as depending on a straightforward balancing of the evidence's probative value under Rule 401 against Rule 403's countervailing considerations of "prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," as suggested by the Third Circuit in *Stevens*, 935 F.2d at 1404 . However, in assessing the probative value of such evidence we must also recall that the Advisory Committee Notes following Rule 401 explain that rules such as Rule 404 and those that follow it are meant to prohibit certain types of evidence that are otherwise clearly "relevant evidence," but that nevertheless create more prejudice and confusion than is justified by their probative value. In other words, we affirm that prior bad acts are generally not considered proof of *any* person's likelihood to commit bad acts in the future and that such evidence should demonstrate something more than propensity.

Lucas's defense is that Presley committed the crime, and she did not. The defense wanted to introduce Presley's conviction in order to demonstrate that in addition to access to the car and his strange behavior, Presley had a propensity for selling cocaine. The defense wants the jury to make the inferential leap that because Presley sold drugs before, he is likely to have done so again.

Lucas argues on appeal that, although she specifically stated before the district court only that she would use the evidence of Presley's conviction to prove propensity, this information should have been admitted on the basis that it could also have been used to prove knowledge and intent, which are among several exceptions in Rule 404(b) that are listed as purposes for which such testimony can be introduced. This argument is not convincing. Presley's knowledge of what cocaine is, or what it looks like, is not at

issue in this case. And certainly a prior conviction does not demonstrate Presley's intent to sell in the future. Such an argument would turn the exception into the rule. If, instead, it was shown that Presley had borrowed someone else's car in which to do the prior drug deal or if he had packaged the cocaine in the same way and had left it under the passenger's seat in the same way, the evidence of his prior drug deal might have been sufficiently probative, but the simple fact that he sold cocaine before is only minimally relevant.

We therefore hold that the standard analysis of Rule 404(b) evidence should generally apply in cases where such evidence is used with respect to an absent third party, not charged with any crime. In this case, not only does the evidence not fall within the any of the exceptions, even if it did, the district court did not err in determining that any probative value of the prior bad act was outweighed by its prejudicial effect. Introducing evidence of Presley's prior conviction would have been prejudicial to fair consideration in that it would have made it easier for the jury to lay the blame on Presley for the drug deal despite evidence presented at trial.[2] Under the abuse of discretion standard, we will only reverse if we are firmly convinced that a mistake has been made. *Nida v. Plant Protection Ass'n Nat'l*, 7 F.3d 522, 527 (6th Cir. 1993). Accordingly, the district court did not abuse its discretion in excluding this evidence.

In addition, we hold that Lucas was not prevented from presenting a complete defense, as she is entitled to do under the Constitution, because of the district court's decision to bar the admission of this evidence. *See, e.g., Crane v. Kentucky*,

---

[2]In the Advisory Committee Notes to Rule 403, it is explained that "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Here the jury might have made a decision that Presley was the culprit simply because of an unfair inference that because he had sold cocaine before, he had done so here, and not on the basis of actual evidence linking him to the crime.

476 U.S. 683, 690 (1986) (holding that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks and citations omitted). As we have stated previously, a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence. *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (*en banc*). *See also Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Lucas was able to explore her theory that Presley was in fact the culprit and present it to the jury through Quinney's and Watts's testimony, as well as her own, describing his alleged strange behavior and his alleged access to the car. The exclusion of Presley's prior conviction did not violate Lucas's constitutional right to present a defense and was instead an appropriate ruling by the district court in accordance with the Federal Rules of Evidence.

Finally, we note that Federal Rule of Evidence 609 is not applicable to this case, though it was mentioned by the defense in its brief as an alternate ground for admitting Presley's prior conviction. However, Rule 609 addresses only the ability of a party to impeach a witness through the introduction of prior convictions, specifically for the purpose of attacking credibility. Because Presley was not a witness (indeed, he has never been found nor his current existence established), Rule 609 is not applicable.

## B. Prior Sexual Assault

Lucas contends that the district court abused its discretion in determining that the prejudicial impact of admitting testimony regarding her prior sexual assault in prison outweighed any relevance these events had in explaining her nervous behavior when arrested. We hold that even if the district court abused its discretion, any error was harmless and thus nonreversible.

The government, through the testimony of Trooper Earl Hammett, introduced evidence at trial that Lucas had been

nervous when stopped by the Tennessee Highway Patrol. Specifically, Trooper Hammett stated in his testimony that Lucas "got nervous after she found out that we were going to try to get back in the car after it was locked." The prosecutor reiterated this fact in his closing argument to the jury, in which he stated in relevant part:

> Now, once she realized that not only was she going to be arrested but that the car was going to be towed, that's when Trooper Hammett indicated that he had started noticing some things. He indicated that when she was asked to remove her items from the vehicle that he tried to flash the light inside of the car to assist her, and he indicated that she was dodging the flashlight, his flashlight. He also told you that she became nervous.

Lucas sought to counter this evidence by explaining that she had been raped by male guards when she had previously been in prison for conspiracy to commit bank fraud, and it was for this reason that she had been nervous when told by the officers that she was under arrest.[3] Furthermore, Lucas wanted to explain that the federal government had paid her $500,000 in a settlement, because of the rapes she had endured while in the prison system. The district court judge agreed to allow Lucas to testify to the fact that she had received money in a lawsuit settlement, in order to explain the source of her money and to counter inferences made by the prosecution that the money came from drug dealing. However, the judge determined that she could not testify to the fact that she had been raped. The following exchange took place between the judge and Lucas's lawyer on this issue:

> **Defense Counsel**: Judge, all these issues have been raised, and one of the issues has been, Why were you

[3]The Presentencing Report states that Lucas "was subjected to sexual assaults and gang rape while incarcerated at a men's jail facility."

nervous out there? Why were you nervous out there? I need to be able to, without - - I fully respect what the court is saying. We don't need to talk about exactly what that was or give them the gruesome specifics, but I need to ask if her - - Can I ask her a question to the effect, Did you experience in prison - - you know, she's actually been treated for post-traumatic stress syndrome, and I want to know if I can ask her - -

**The Court**: You can certainly have her explain that she was nervous because she was afraid she was about to be arrested and she didn't want to be arrested. But that doesn't mean she gets to tell about all the intimate horrible details of prison.

**Defense Counsel**: Could I mention, I suppose, because she spent time in prison, the fears that that's caused her through the years?

**The Court**: Well, certainly.

**Defense Counsel**: Something to that effect?

**The Court**: There's absolutely nothing wrong with that. But we're not going to turn this into a demonstration that we've got Mother Teresa here, who is a national TV star, who was sexually abused in prison. None of those things have anything to do with this case.

We review a district court's decision to exclude evidence for abuse of discretion. *United States v. Bartholomew*, 310 F.3d 912, 920 (6th Cir. 2002). "Under this standard, we will leave rulings about admissibility of evidence undisturbed unless we are 'left with the definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard.'"

*Ibid*. (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

Lucas argues that the information regarding her rape in prison was crucial to her defense. Lucas contends that the "jury would assume she would not be unduly nervous [when arrested] as she had experienced this before," since she had been incarcerated before, and thus she needed to explain her nervous behavior. Lucas argues that the evidence of her having been raped was the only information that could effectively counteract the inferences made by the prosecutor. Lucas also contends that the information was not especially prejudicial, other than potentially producing sympathy for Lucas, which might have been minimized through a proper limiting instruction by the district court.

The government argues that Lucas's rape in prison was not relevant, since "[a] sexual assault that occurred seven years earlier than the charged drug offense does not negate any elements of cocaine possession."

Under the Federal Rules of Evidence, all relevant evidence is admissible. *See* Fed. R. Evid. 402. However, a court may exclude relevant evidence whose "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The fact that Lucas was raped while in prison is technically relevant, as it suggests that her behavior, which might otherwise be taken as evidence of guilt and was argued as such by the prosecution, was potentially explainable for other reasons. *See, e.g., Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (noting that the rules regarding relevance are "quite liberal," since "'evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence' is relevant." (quoting

Fed. R. Evid. 401)). In addition, the risk of undue sympathy could have been managed to some extent by a limiting instruction. However, the Federal Rules of Criminal Procedure provide that an error "which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 52. To determine whether barring this evidence was harmless error, we consider the impact of the error upon the right of the defendant to a fair trial. *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999).

Lucas's nervousness upon being faced by the police was not crucial to the prosecution's case. The physical evidence of the drugs in the car she was driving, the cash in her pocket, and inconsistencies in her testimony as compared to the statements she made to the officers the night she was arrested on such issues as the existence of a family reunion, constitute convincing evidence, so that even if barring the evidence of Lucas's prior sexual assault was done in error, it was harmless error that does not warrant the grant of a mistrial.

## C. The *Batson* Challenge

Whether a party exercised its peremptory challenges in a discriminatory manner is a finding of fact, which we review for clear error. *United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002).

The jury venire for this trial included only two African-Americans and the prosecutor exercised a peremptory challenge to exclude one of those jurors, Ms. Green, from the jury. Lucas objected to this challenge, noting that there did not appear to be any cause for eliminating her from the jury, other than the fact that she was black. The prosecutor represented that he was using a peremptory challenge to remove Ms. Green because she had given the "impression that . . . she just didn't want to be [there]," and "had indicated that she had been divorced before [–] we knew that might be a factor." The district court found that the Government had

articulated a legitimate nondiscriminatory reason for the challenge and permitted Ms. Green's removal.

A *Batson* claim is analyzed in three steps. First, the defendant must make a *prima facie* showing that the prosecutor removed a potential juror for a discriminatory reason. If the defendants make this showing, the second step requires the prosecutor to articulate a nondiscriminatory reason for the removal. Assuming that the prosecutor does so, the third step requires the trial court to determine whether the opponent of the peremptory strike has proven purposeful discrimination. *See, e.g., United States v. Yang*, 281 F.3d 534, 548-49 (6th Cir. 2002), *cert. denied*, 123 S. Ct. 1015 (2003).

In reviewing the government's race-neutral explanation, we need not find that the reason given is "persuasive, or even plausible." *Id*. at 548. All that is necessary is that the reason not be inherently discriminatory. *Id*. at 548-49. It is, therefore, difficult to conclude in this case that the district court made a clear error in determining that the prosecutor's peremptory challenge was free of race bias, since there is no other evidence of discriminatory bias and the prosecutor did not exercise a peremptory challenge in order to eliminate the other one of two black persons from the jury. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1520-21 (6th Cir. 1990) (holding that the final makeup of the jury is relevant to a finding of discrimination). We therefore affirm the district court's ruling on this issue.

## D. Downward Departure

A district court's failure to grant a downward departure can only be reviewed by us upon appeal if the lower court erroneously believed that it lacked authority to grant such a departure as a matter of law. *See United States v. Owusu*, 199 F.3d 329, 349 (6th Cir. 2000); *United States v. Landers*, 39 F.3d 643, 649 (6th Cir. 1994). Furthermore, the district court need not explicitly state that it is aware of its discretionary

authority to depart downward, since there is "no duty on the trial judge to state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so." *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995).

Lucas argues that the district court should have granted a downward departure in her sentence on the basis of her rape, and of the charity work that she did for Amnesty International and Human Rights Watch. The government contends not only that the district court understood that it was able to grant a downward departure, but also that doing so would not have been reasonable under the circumstances.

The district court, in making this ruling, stated as follows:

Now, concerning the defendant's prior incarceration, it is tragic and unfortunate what happened to Ms. Lucas when she was in federal custody on her prior conviction. It is not the purpose of prisons to inflict that sort of injury and damage upon someone, and I regret seriously that that happened to Ms. Lucas. But that's not a basis for a downward departure *in this case*. I'm sure it was very distressing to the defendant, but that is not – there's not a showing that the mental effect of that tragic incident affected her responsibility in this case or is – and it's not a basis for any sort of downward departure.

Also, her work for Amnesty International and the other human rights organizations, that's commendable. That came about as a result of her being a victim, I suspect, It's good work, but it is not a basis for a downward departure *in this case*.

(emphasis added).

The district court does not state that it does not have the ability to depart downwards in general. Instead, it states that there was no basis for a departure *in this case*. Therefore, we have no jurisdiction to consider this part of the appeal.

## III

For the reasons given above, we AFFIRM Lucas's conviction and subsequent sentence.

## CONCURRENCE

ROSEN, District Judge, concurring. I agree with the majority and join in affirming Lucas's conviction and sentence. I write separately, however, on the "reverse 404(b)" issue discussed in Part II of the majority opinion as I find the relevancy/prejudice test and rationale set out by the Third Circuit in *United States v. Stevens*, 935 F.3d 1380 (3rd Cir. 1991), more compelling than the standard Rule 404(b) analysis adopted by the majority where, as here, the prior "bad act" is that of an absent third party, not that of the defendant, and the evidence is not being used by a prosecutor against a defendant, but rather is offered as exculpatory evidence *by* the defendant.

Lucas's defense at trial was that Morell Presley, not Lucas, committed the crime with which she was charged. To support this defense, Lucas sought to admit evidence of Presley's prior conviction for possession with intent to distribute cocaine. The district court denied this request finding that it was more prejudicial than probative. Although not disagreeing with the district court's finding, the majority now holds that the straightforward relevance/prejudice analysis under Rules 401 and 403 is inapplicable in the context of "reverse 404(b)" evidence.[1] Under the majority's ruling here,

---

[1] To the extent that the majority's opinion can be read to imply that a Rule 403 probative value/prejudice analysis is not part of a traditional Rule 404(b) analysis, that would be an inaccurate statement of the law. Well-settled law clearly provides that a Rule 403 balancing is an essential part of a Rule 404(b) analysis. *See e.g., United States v. Largent*, 545 F.2d 1039, 1043 (6th Cir.1976), *cert. denied*, 429 U.S. 1098 (1977); *United States v. Ring*, 513 F.2d 1001, 1005 (6th Cir. 1975); *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985); *United States v. Vance*, 871 F.2d 572, 575 (6th Cir. 1989), *cert. denied*, 493 U.S. 933 (1989); *United States v. Blakeney*, 942 F.2d 1001, 1018 (6th Cir. 1991), *cert.*

evidence of "other crimes," whether offered to incriminate or to exonerate the defendant, is subject to a straightforward application of Rule 404(b).

Fed. R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, preparation, plan, knowledge, identity, or absence of mistake or accident.

Observing that the Rule is directed to evidence of other acts of "*a person*" and not only the other acts of "*a defendant*," the majority finds that the standard Rule 404(b) analysis should apply with respect Morell Presley's prior conviction for possession with intent to distribute cocaine. Because Lucas failed to demonstrate that Presley's conviction could have been offered for any purpose other than to prove Presley's propensity to commit the crime with which Lucas was charged, the majority finds admission of the evidence to be precluded by a straightforward application of Rule 404(b).

Although at first blush, the majority's "plain language of the rule" approach carries some weight and finds some support in the case law, a closer examination of the policies underlying Rule 404(b) and the case law addressing the "reverse 404(b)" evidence issue, persuades me that the Rule 404(b) should not be applied in cases where, as here, the defendant offers prior act evidence of a third party to prove some fact -- even propensity -- relevant to the defense.

First, both the source and policy underlying Rule 404(b) demonstrate that the Rule is intended to protect *a party* to the

*denied,* 502 U.S. 1035 (1992).

litigation -- in particular, the criminal defendant -- from the prejudice of the propensity/character taint danger. Rule 404(b)'s basic rule of exclusion -- that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith -- has its source in the common law. The common law rule was that "the doing of a criminal act, not part of the issue, is not admissible as evidence of the doing of the criminal act charged." *See* Wigmore, Code of Evidence, 3d ed., p. 81. *See also, United States v. Dudek*, 560 6th F.2d 1288, 1295-96 (6th Cir. 1977) (noting that Fed. R. Evid. 404(b) restates the common law). The policy underlying the common law rule was the protection of the criminal defendant. *See* Wright & Graham, Federal Practice and Procedure: Evidence, § 5239, pp. 436-439.

Rule 404(b) continues the policy of the common law. *Id.* at 439. This is clear from this Court's observation in *United States v. Phillips*, 599 F.2d 134 (6th Cir. 1979). In *Phillips*, the Court noted that Rule 404(b)'s exclusionary rule addresses two main policy concerns:

(1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged.

599 F.2d at 136.

Professor Weissenberger explained these policy concerns in his treatise as follows:

[E]vidence of the extrinsic act is excluded because it is thought that the jury might punish an individual for the discrete conduct rather than weighing only the direct evidence of the charged crime. Another policy supporting Rule 404(b) is a recognition of the danger that

the jury may misestimate the probative value of the extrinsic act evidence in evaluating its significance . . . . The natural and inevitable tendency of the tribunal -- whether judge or jury -- is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take proof of it as justifying a condemnation irrespective of guilt of the present charge.

Weissenberger's Federal Evidence, § 404.12 3d. ed. (1998).

The foregoing discussion demonstrates that the principal policy consideration underlying Rule 404(b)'s exclusionary rule is to protect the parties in an action, and in particular, criminal defendants, from the danger of unfair prejudice. The danger of prejudice to a party -- particularly a criminal defendant -- however, does not exist in the context of "reverse 404(b)" evidence where, as here, the *defendant* offers evidence of other crimes or bad acts of a third party exculpatorily.

Notwithstanding these policy considerations, because of the language used in Rule 404(b), i.e., the use of "a person" instead of "a party", the courts have not treated "reverse 404(b)" evidence uniformly and the circuits are divided on the issue of the Rule's applicability with regard to such evidence. The Seventh and the Ninth Circuits, like my colleagues on the panel in this case, have taken a "plain language" approach, and because Rule 404(b) speaks not of the parties to a case but of "a person," have held that Rule 404(b) applies not only to the extrinsic acts of the parties but also to the acts of absent third parties. *See Agushi v. Duerr*, 196 F.3d 754, 759-761 (7th Cir. 1999); *United States v. McCourt*, 925 F.2d 1229 (9th Cir. 1991).

However, the First, Second, Third, Fifth and Eleventh Circuits have taken the opposing view and have all determined that Rule 404(b) is not applicable to evidence of acts of third parties. *See United States v. Gonzalez*, 825 F.2d

572, 582 (1st Cir. 1987), *cert. denied*, 484 U.S. 989; *United States v. Aboumoussallem*, 726 F.2d 906, 911-912 (2nd Cir. 1984); *United States v. Stevens,* 935 F.3d 1380 (3rd Cir. 1991); *United States v. Krezdorn*, 639 F.2d 1327, 1332-33 (5th Cir. 1981), *cert. denied*, 465 U.S. 1066 (1984); *United States v. Morano*, 697 F.2d 923, 926 (11th Cir. 1983). These courts were persuaded by the policy underpinnings of Rule 404(b). The Eleventh Circuit's explanation in *United States v. Krezdorn, supra*, is illustrative:

The extrinsic acts rule is based on the fear that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense. Consequently, where the only purpose served by extrinsic offense evidence is to demonstrate the propensity of the defendant to act in a certain way, the evidence must be excluded. When, however, the extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith. When the evidence will not impugn the defendant's character, the policies underlying Rule 404(b) are inapplicable.

639 F.2d at 1332-1333 (citations omitted).

Courts adopting the policy approach to Rule 404(b) found that policy considerations were particularly persuasive with regard to evidence of acts of third parties offered exculpatorily by criminal defendants. For example, in *United States v. Aboumoussallem*, *supra*, a narcotics trafficking defendant sought to offer in support of his defense that he had been duped into transporting the drugs by his cousins evidence that a few months earlier, another individual had been similarly duped by these same cousins to transport narcotics. The district court excluded the evidence as not relevant, more prejudicial than probative, and not admissible under Rule 404(b). The Second Circuit disagreed with the district court's determination that the defendant's proffered

evidence was not relevant and inadmissible under Rule 404(b), explaining:

> We believe the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword. The prosecution, in the Anglo-American tradition, may not ordinarily offer evidence of a defendant's prior wrongdoing for the purpose of persuading the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial. As Dean Wigmore points out, the evidence is objectionable not because it has no appreciable probative value but because it has too much. Presumably, the "too much" argument means that a guilty person, and, of far more serious concern, an innocent person, may be convicted primarily because of the jury's willingness to assume his present guilt from his prior misdeed.
>
> Wigmore also identifies objections based on the risk that the jury will convict because the defendant may not have been punished for his prior offenses and the injustice of requiring the defendant to defend against a series of accusations. These possibilities of prejudice must be assessed even in cases where the prosecutor offers similar acts evidence, not to prove the character of the accused, but to prove one of the permissible subsidiary facts listed in Rule 404(b), such as intent or plan. ***However, risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense. In such cases the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense.***

726 F.2d at 911-912 (citations and footnotes omitted; emphasis added).

The absence of prejudice in the context of "reverse 404(b)" evidence was similarly emphasized by the Third Circuit in *Stevens, supra*, 935 F.2d at 1404, and by the New Jersey Supreme Court in *State v. Garfole*, 76 N.J. 445, 388 A.2d 587 (1978), which both the *Stevens* court and the *Aboumoussallem* court cited with approval:

> . . .[O]ther-crimes evidence submitted by the prosecution has the distinct capacity of prejudicing the accused. Even instructions by the trial judge may not satisfactorily insulate the defendant from the hazard of the jury using such evidence improperly to find him guilty of the offense charged merely because they believe he has committed a similar offense before. . . . But when the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.

*Id*., 76 N.J. at 452-53, 388 A.2d at 591 (footnote omitted).

It was precisely because of the absence of prejudice to the defendant that the Third Circuit held in *Stevens* that admissibility of "reverse 404(b)" evidence was governed by the relevancy/prejudice considerations of Fed. R. Evid. 401 and 403:

> We agree with the reasoning of *Garfole* and with its holding that the admissibility of "reverse 404(b)" evidence depends on a straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues. Recasting this standard in terms of the Federal Rules of Evidence, we therefore conclude that a defendant may introduce "reverse 404(b)" evidence so long as its

probative value under Rule 401 is not substantially outweighed by Rule 403 considerations. . . . [Thus], a defendant must demonstrate that the "reverse 404(b)" evidence has a tendency to negate his guilt, and that it passes the Rule 403 balancing test.

935 F.2d at 1404-05 (footnote omitted).

I agree with the reasoning of the Second and Third Circuits. In my view, the simple fact that proffered evidence involves somebody's prior bad act -- not the defendant's -- does not automatically bring it under the Rule 404(b) rubric and admission standard. The entire 404(b) paradigm is intended to protect a party to the litigation from the prejudice of the propensity/character taint danger. The danger of prejudice to a party, -- particularly a criminal defendant -- however, does not exist in the context of "reverse 404(b)" evidence; indeed, it is that party which the Rule is intended to protect who is offering the evidence.

I find the Third Circuit's reasoning particularly persuasive and would apply the relevancy/prejudice test established in *Stevens* here because, where the character interests and inferences of a party are not implicated, there is simply no evidentiary policy or purpose served by precluding a propensity consideration by the jury that is not already addressed by the traditional Rule 401/403 evidentiary analysis. (For example, any concerns about prejudice to a party -- here, the Government -- or confusion of the issues, by admission of the evidence would be adequately dealt with in the context of a Rule 403 analysis.)

In this case, there seems little doubt that Presley's prior conviction for cocaine distribution would tend to negate Lucas's guilt by corroborating her defense that the drugs were Presley's, not hers, albeit through the propensity inference, and there can be no serious question, therefore, that such evidence is relevant. Further, the danger of character taint posed by the propensity inference is not present here because

Presley, whose character would be tainted, is not a party. Therefore, the more rigidly constructed constraints of Rule 404(b) need not and should not apply. Instead, this should be treated as a simple relevance issue and, since the proffered evidence has a tendency to negate Lucas's guilt, it passes Rule 401 relevancy muster.

This leaves only the Rule 403 part of the analysis. The disputed evidence is especially probative here because the Defendant testified and her credibility was, in the absence of much other independent evidence showing her involvement with the drugs, an important element for the jury to weigh. Unlike the district court, I would have found that the probative value of the evidence of Presley's prior conviction was not substantially outweighed by the dangers of prejudice or confusion, particularly with the availability of a limiting instruction, and would have admitted the evidence. But, the standard of review is abuse of discretion, and although I believe this presents a close question, the fact that I would have admitted the evidence does not mean that the trial judge here abused his discretion in excluding it. I am particularly persuaded that there is no abuse of discretion here since the issue is a close one and there is a split in the circuits as to the appropriate standard to apply to reverse 404(b) evidence -- and, I agree with the majority that the only use of the evidence here would have been for the propensity inference, and that is not permitted by the straightforward Rule 404(b) analysis applied by the majority and the other circuits that have adopted this test.[2] Accordingly, with respect to the

_____

[2]I have somewhat the same view about the jail rape evidence offered by way of explanation for Defendant's nervousness. The rather circumscribed, limited testimony she was allowed to give -- that she was afraid of going to jail (as would be most people) hardly gives the same texture and context to her nervous reaction as does the purported real reason (i.e., the rape experience). Indeed, taken alone, the limited "afraid of going to jail" reason she was allowed to testify to seems to be a weak one and the jury might well have been misled by it. But again, although I might have allowed Defendant to testify that she was raped while in jail,

reverse 404(b) issue, I concur in the result reached by majority although not in its analysis. With respect to all of the other issues presented, I join in the majority opinion.

---

I cannot say that the trial judge abused his discretion in keeping that testimony out.